[Docket No. 17]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| TYRONE K. JOHNSON, | Civil No. 25-3053 |
| Plaintiff, | (RMB/MJS) |
| v. | |
| TRANSUNION, LLC, | **OPINION** |
| Defendant. | |

**APPEARANCES**:

Tyrone K. Johnson

    *Pro Se Plaintiff*

Joshua Allen Stiers
TRANSUNION, LLC
555 W. Adams St.
Chicago, Illinois 60661

    *Attorney for Defendant TransUnion, LLC*

**RENÉE MARIE BUMB, Chief United States District Judge**:

This matter comes before the Court upon the Motion to Dismiss [Def.'s Br. (Docket No. 17)] filed by Defendant TransUnion, LLC ("Defendant" or "TransUnion") seeking the dismissal of the Amended Complaint [Am. Compl. (Docket No. 16)] filed by *pro se* Plaintiff Tyrone K. Johnson ("Plaintiff"). Plaintiff has opposed the motion. [Pl.'s Opp'n (Docket No. 18).] Defendant has submitted a reply in further support of its motion. [Def.'s Reply (Docket No. 19).] The Court has

considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, Defendant's Motion to Dismiss will be **GRANTED**.  Plaintiff's claims will be **DISMISSED WITHOUT PREJDUICE** and with leave to amend.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff claims that he is "a consumer who is the victim of inaccurate reporting by [TransUnion] regarding seven credit accounts with inaccurate, incomplete and (or) missing information." [Am. Compl. ¶ 13.]  Once he became aware of these purported inaccuracies, Plaintiff sent a "detailed consumer dispute letter" to TransUnion. [*Id.* ¶ 17.]  Plaintiff lists seven tradelines in the Amended Complaint that were allegedly the subjects of his dispute letter.  As to certain tradelines, he identifies certain discrepancies between the reporting of the three national credit reporting agencies ("CRAs").  [*Id.* ¶¶ 18, 20, 22, 23.]  He also alleges that information is missing for certain tradelines, such as the "amount last paid field" or past due amounts. [*Id.* ¶¶ 20, 22.]   The Amended Complaint refers repeatedly to the "inaccurate, incomplete, and missing data outlined specifically in [Plaintiff's] dispute letter to [TransUnion]" [*id.* ¶¶ 18–24], yet the dispute letter is not annexed to the Amended Complaint.   It is unclear whether further information regarding the alleged inaccuracies was included in the dispute letter.

Plaintiff sent the dispute letter to TransUnion via certified mail on January 2, 2025. [*Id.* ¶ 25.] The day after the letter was received, TransUnion responded to Plaintiff via letter, as follows:

> We recently received a request that included your information, but it didn't appear that you or a properly authorized third party sent it to us. We take the privacy and security of your data very seriously, so we won't process requests unless they come directly from you or an authorized third party. . . .
>
> It's important to know that if you see something on your TransUnion credit report that you believe is inaccurate, you can dispute it easily and securely on your own for free, without paying a fee to any company. . . .
>
> If you feel you received this letter in error, please contact us to confirm your identity and the information you wish to dispute. You may do this by visiting transunion.com/credit-disputes and selecting "Start Dispute" or you may contact us by phone at 800-916-8800 Monday - Friday 8:00AM - 11:00PM Eastern and on Saturday & Sunday 8:00AM - 5:00PM Eastern, excluding holidays.

[Compl. Ex. B (Docket No. 1); Am. Compl. ¶¶ 27–28.][1] Plaintiff does not allege that he contacted TransUnion to confirm his identity and the information he wished to dispute, as instructed in the letter. Instead, Plaintiff claims that TransUnion categorically refused to investigate his claims, despite his allegedly specific and detailed dispute letter. [Am. Compl. ¶¶ 30–33, 44.]

Based on these facts, Plaintiff filed this *pro se* action against Defendant on April 23, 2025, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. §§1681,

---

[1]    The Amended Complaint purports to attached TransUnion's letter as Exhibit B. [Am. Compl. ¶ 27.] No Exhibit B was attached to the Amended Complaint, likely in error. The letter was in fact included as Exhibit B to the original complaint.

*et seq.* (the "FCRA") [Compl. (Docket No. 1)]. Defendant moved to dismiss the original complaint [Docket No. 9] and Plaintiff sought leave to amend his pleadings in response to that motion [Docket No. 14]. The Court permitted Plaintiff to file his Amended Complaint and denied the motion as moot [Docket No. 15]. On July 17, 2025, the Amended Complaint was filed, which sets forth two causes of action: (1) willful and negligent non-compliance with 15 U.S.C. § 1681e(b) (Count I); and (2) willful and negligent non-compliance with 15 U.S.C. § 1681i (Count II). On August 7, 2025, Defendant filed the instant motion to dismiss the Amended Complaint. The briefing is complete, and the motion is now ripe for decision.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Courts will dismiss a complaint under Rule 12(b)(6) if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a motion to dismiss, courts must accept the complaint's well pled factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom." *Malleus*, 641 F.3d at 563 (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). Courts will not accept "legal conclusions" as true, and

4

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 663. Courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court's role in reviewing the sufficiency of a complaint is thus limited: the issue is not "whether the plaintiffs will ultimately prevail" but "whether they are entitled to offer evidence to support their claims." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) (citation omitted).

Bearing in mind Plaintiff's *pro se* status, the Complaint must be "liberally construed" and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted). Notwithstanding liberal construction, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Owens v. Armstrong*, 171 F. Supp. 3d 316, 328 (D.N.J. 2016) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). In other words, *pro se* litigants are not exempt from complying with federal pleading standards. *See Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

### III.    DISCUSSION

Plaintiff claims that Defendant's credit reports and refusal to investigate his dispute letter violated Sections 1681e(b) and 1681i of the FCRA.  [Am. Compl. ¶¶ 50–77.]    The FCRA seeks "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). Consistent with this purpose, the FCRA places certain duties on CRAs who, like Defendant, "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness."  *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).  To enforce the FCRA, Congress has tailored a private right of action that allows consumers to sue CRAs who "willfully or negligently fail to comply with certain duties to consumers" under the statute. *Id.* at 859 (citing 15 U.S.C. §§ 1681n, 1681o).  Two such duties are relevant to this case.

Section 1681e(b) of the FCRA provides, in relevant part: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  To state a claim under this section, a plaintiff must plead the following elements: (1) inaccurate

information was included in a credit report; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered an injury; and (4) that injury was caused by the inclusion of the inaccurate entry. *See Hafez v. Equifax Info. Servs., LLC*, 666 F. Supp. 3d 455, 460–61 (D.N.J. 2023) (citing *Cortez*, 617 F.3d at 712–13).

The FCRA also confers on consumers the right to have negative information in their credit reports investigated (or "reinvestigated") for accuracy. Specifically, Section 1681i(a) provides that if a consumer disputes information and properly notifies the CRA of the same, the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). To state a claim under Section 1681i, a plaintiff must – in addition to pleading inaccuracy – establish that the CRA "(1) had a statutory duty to reinvestigate, and (2) would have discovered a discrepancy had it undertaken a reasonable investigation." *Stephens v. Equifax, Inc.*, 2023 WL 8531825, at *3 (D.N.J. Oct. 31, 2023) (citing *Cortez*, 617 F.3d at 713–14).

Defendant seeks dismissal of the Amended Complaint in its entirety because Plaintiff, "as a threshold matter," has failed to "establish a reported inaccuracy" necessary to state a claim under either § 1681e(b) or § 1681i(a). [Def.'s Br. at 4–6.] The Court agrees. "These two sections of the FCRA, § 1681e(b) and § 1681i(a), share [this] element in common." *Anigbogu v. Midland Credit Mgmt., Inc.*, 2025 WL 99581, at *2 (D.N.J. Jan. 15, 2025). To make out a claim under Section 1681e(b), a plaintiff

7

must allege that the "inaccurate information was included in a consumer's credit report." *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342 (3d Cir. 2022). Section 1681i(a) similarly requires a plaintiff to allege "that the reported information was in fact inaccurate." *Id.* at 344.

The Court of Appeals for the Third Circuit recently agreed with what many district courts in this Circuit have reasoned: general allegations of inaccurate information in a consumer credit report are insufficient to state a plausible violation of the FCRA. *See Anigbogu*, 2025 WL 99581, at *2 (collecting cases). In *Williams v. Experian Information Solutions, Inc.*, a *pro se* plaintiff brought suit under the FCRA for "the inclusion in his credit report of information that was 'inaccurate.'" 2024 WL 3439776, at *1 (3d Cir. July 17, 2024). The Third Circuit affirmed the district court's dismissal of the complaint because it "consist[ed] almost entirely of conclusory allegations that Experian included 'inaccurate' information in his report." *Id.* Even the complaint's most specific allegation – that "[t]he inaccurate information includes a credit card account from [a credit union] that represented a balance and a late payment" – "did not allege how or why that information was inaccurate or how [the defendant] should have reported it." *Id.* at *1.

The allegations before the Court are largely identical to those in *Williams.* Plaintiff claims that the "inaccurate, incomplete, and missing data" regarding the seven tradelines are "outlined specifically" in his dispute letter to TransUnion, but neither the letter nor the specific information is included in the Amended Complaint

8

itself.  [Am. Compl. ¶¶ 18–24.]  Plaintiff does not specify how any information reported was inaccurate by, for example, alleging that he did not actually have a balance on an account or that he did not ever make a late payment.  *See Williams*, 2024 WL 3439776, at *1 n.2.  Bald, conclusory allegations of inaccuracies are patently insufficient to state a claim.  *Id.* at *1; *see also Ashcroft*, 556 U.S. at 663 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The only specific information included in the Amended Complaint concerns slight discrepancies between the information reported by each of the three national CRAs, TransUnion, Experian, and Equifax.  [Am. Compl. ¶¶ 18, 20, 22, 23.]  Plaintiff, however, does not allege "what the accurate information actually is."  *Cruel v. Experian*, 2023 WL 4140828, at *3 (E.D. Pa. June 22, 2023).  Instead, he points only to the inconsistency itself.

But courts have routinely held that allegations of discrepancies of information reported by the different CRAs "without more, do not permit an inference that either report contains 'false or materially misleading' information."  *Verlus v. Experian Info. Sols., Inc.*, 2025 WL 836588, at *4 (D. Mass. Mar. 17, 2025); *see also De Koning v. Trans Union LLC*, 2026 WL 444957, at *3 (S.D. Fla. Feb. 17, 2026) ("Inconsistent information across three credit reports indicates not an objectively verifiable error, but rather a dispute about which version is correct."); *Allen v. Experian Info. Sols., Inc.*, 2025 WL 3485873, at *3 (D. Idaho Dec. 4, 2025) ("Allegations of inconsistencies or

9

discrepancies among credit reports, standing alone, do not permit an inference that any of the reports contains 'false or materially misleading' information."); *Williams v. Equifax Info. Servs. LLC*, 2025 WL 945600, at *6 (N.D. Ga. Feb. 5, 2025); *Cruel*, 2023 WL 4140828, at *3. "The reason for this requirement is 'straightforward': when CRAs report different balances [for example], 'both figures could be accurate as of different reporting dates, or one could be accurate and the other not.'" *Silva v. Santander Consumer USA Inc.*, 2026 WL 364426, at *4 (W.D. Wash. Feb. 10, 2026) (quoting *Allen*, 2025 WL 3485873, at *2). Plaintiff's FCRA claims must be dismissed insofar as they allege that the mere fact of inter-agency discrepancies means Defendant's reports were inaccurate or materially misleading.

In his opposition, Plaintiff appears to change tack, seemingly conceding that controlling law "requires a [TransUnion]-entry analysis, not dismissal based on generalities about differences across bureaus." [Pl.'s Opp'n at 3 (citing *Bibbs*, 43 F.4th at 342–45).] Instead, he argues that Defendant's reports are misleading under the "reasonable reader" standard set forth in *Bibbs*. Specifically, Plaintiff clarifies that the inaccuracies he alleges include omissions of information on four specific tradelines, which he contends are "plausibly misleading" to a reasonable reader. [*Id.* at 2–3 (citing Am. Compl. ¶¶ 20–23).]

It is true that information in a credit report that "is technically correct, . . . may nonetheless be inaccurate if, through omission, it creates a materially misleading impression." *Bibbs*, 43 F.4th at 343 (quoting *Seamans*, 744 F.3d at 865). Whether

10

information is materially misleading must be determined under a reasonable reader standard.  This is "an objective standard, reading the report in its entirety, not a subjective one."  *Id.* at 345.  A reasonable reader in this context is one who is "in a position to make an adverse decision based on a credit report."  *Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 574 (E.D. Pa. 2021), *aff'd,* 43 F.4th 331 (3d Cir. 2022).  This "runs the gamut to include sophisticated entities like banks and less sophisticated individuals such as local landlords."  *Bibbs*, 43 F.4th at 345.

Plaintiff claims that the Upgrade Inc. 12084 tradeline, reporting an inconsistent payment history including certain late payments but reports no current past due amount, is "plausibly misleading a reasonable reader into believing a current delinquency."  [Pl.'s Opp'n at 3 (citing Am. Compl. ¶ 22).]  As to the Upgrade Inc. 3005 tradeline, Plaintiff takes issue with the omission of the "amount last paid" field.  [*Id.* (citing Am. Compl. ¶ 20).]  The Best Egg tradeline, according to Plaintiff, "risk[s] a misleading impression as to current status" because it includes information regarding certain late payment from 2024.  [*Id.* (citing Am. Compl. ¶ 21).]  Finally, as to the PNC Bank tradeline, Plaintiff claims the balance and past due amounts reported are "inconsistent with the last-payment date [Defendant] itself reports," making the information "plausibly misleading."  [*Id.* (citing Am. Compl. ¶ 23).]

The *Bibbs* court considered similar allegations and asked the very question this Court must ask here: "Even if the information on [Plaintiff's] credit reports is technically accurate, is a reasonable creditor that reads [his] credit reports in their

entirety likely to incorrectly believe that [he, for example,] currently owe[s his] former creditors payments?" *Bibbs*, 43 F.4th at 344. The Third Circuit found that a reasonable reader would not be misled, reasoning that the mere "possibility of further clarity is not an indication of vagueness; just because a report could potentially be a bit clearer does not mean that it is not very clear at present." *Id.* The Court finds that this applies equally here as well.

Plaintiff's allegations – at most – suggest the possibility of further clarity. Indeed, he presents nothing more than his *subjective* belief that his credit reports were "plausibly misleading." But the reasonable reader standard is an *objective* standard taken from the perspective of a creditor, broadly defined, not the consumer. *Id.* at 345. And for good reason: Plaintiff's subjective belief is nothing more than his personal speculation. "Courts have repeatedly held that a personal opinion is 'mere speculation that the notation was misleading' and is therefore insufficient to support a claim of inaccuracy under the FCRA." *Barakat v. Equifax Info. Servs., LLC*, 2017 WL 3720439, at *3 (E.D. Mich. Aug. 29, 2017) (collecting cases); *see also Elsady v. Rapid Glob. Bus. Sols., Inc.*, 2010 WL 2740154, at *7 (E.D. Mich. July 12, 2010) ("[A] plaintiff's mere assertion that a report was misleading, or even his proof [that] a lay person would be misled, is insufficient to establish that a report was misleading and, therefore, inaccurate. At a minimum, a plaintiff must prove that a creditor or consumer of credit reports would be misled.").

The facts set forth in the Amended Complaint do not sufficiently allege that any of the entries on Plaintiff's credit reports were inaccurate or misleading to a reasonable reader. Accordingly, his claims fail at the threshold.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. The Amended Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may submit a second amended complaint that remedies the deficiencies identified herein within **thirty (30) days**. An accompanying Order shall issue on this date.

/s/Renée Marie Bumb
Renée Marie Bumb
Chief United States District Judge

DATED: March 30, 2026

13